MAURICE G. PAUL v. HAROLD DAVIS, INC., and B. W. WARD.

20 So. (2nd) 795                                      January Term, 1945

February 6, 1945                                          Division B

*John M. Murrell, Wm H. Malone,* for appellant.

*Hoffman & Durant* for Harold R. Davis, Inc., and *Copeland, Therrell & Baisden,* for B. W. Ward, appellee.

THOMAS, J.:

Although three questions have been propounded by appellant in the final analysis only the general one need be answered, i.e., whether interpleader is appropriate under the circumstances we shall now briefly relate.

The appellee corporation was a real estate broker employing as salesman appellant, who was given the title of "sales manager" but who did not by virtue thereof receive any extra compensation, and Appellee Ward. Each was paid sixty per cent of commissions on sales negotiated by him, forty per cent going to the employer. There was a rule in the organization, promulgated by the sales manager himself so he testified on the stand, that after a salesman interviewed a prospective purchaser "that prospect was supposed to be that salesman's prospect until he was disposed of one way or another." This

plan, so we gather from his testimony, protected the salesman "especially, through the vacation period."

While the salesman, appellee, was on vacation the sales manager, appellant, sold some property to clients of the former. The commission came to $875, $350 of which was indisputably the corporation's. There then arose a controversy over the remainder. The president of the corporation precipitated the matter by undertaking to pay the sales manager, who actually negotiated the sale, sixty per cent of the residue of the commission and the salesman, whose clients the prospects or purchasers were, under the sales manager's rule, forty per cent. The sales manager protested the division and sued for the full amount, whereupon interpleader was instituted.

Clearly the employer owed its employees the definite sum of $525, an obligation it acknowledged when it attempted to divide their share of the commission. It is a strange commentary that an employer could not decide as between two employees the share each should have in the fixed sum of money and found it necessary to resort to a court to settle what amounted to a squabble in the corporate family. True, it is the function of a court to settle disputes and interpret laws, but a suit in interpleader does not fall strictly within the class of the usual adversary action, and for plaintiff to prevail certain fairly well defined rules must be followed and certain elements must be present. Before remarking upon these in detail it is well to make a few general observations relative to the availability and the object of the remedy.

A person may maintain such a suit where he is a stakeholder and two or more persons, whose titles are connected because one derives from the other or both have a common origin, claim from him the same thing, debt, or duty and he does not know which should succeed. If the plaintiff has become liable, even for the same demand, to two claimants, he is not entitled to an interpleader. It is the essential fact that he should actually be liable to only one of the claimants." Pomeroy's Equity Jurisprudence, Fifth Edition, Vol. IV, page 904. The same writer announced that the remedy was not

intended to prevent the risk of two recoveries but the vexation of two suits.

Having made certain general observations we specify the four conditions indispensable to successful maintenance of interpleader. The claims must be dependent or have a common origin, Florida East Coast Ry. Co. v. Eno, et al., 99 Fla. 887, 128 So. 622; the same thing, debt (or duty), or stake must be claimed by the defendants; the plaintiff must have no interest in the subject matter—that is, in strict interpleader as distinguished from a suit in the nature of interpleader, Lowry, et al., v. Downing Mfg. Co., et al., 80 Fla. 745, 87 So. 65; and the plaintiff must be in a position of indifference, having incurred no independent liability to either claimant (Pomeroy's Equity Jurisprudence, supra; 30 Am. Jur., Interpleader, page 218), and it must appear "that no act on his part has caused the embarassment of conflicting claims and the peril of double vexation." Fogg v. Goode, infra.

The only component which may be dismissed at the outset is the common origin of the defendants' claims. This seems to have been established. It is very doubtful that plaintiff's status as a "stakeholder," its ignorance of the manner in which the conflicting claims should be determined, its disinterestedness and indifference, its freedom from independent liability are of the quality contemplated by the lawmakers as the remedy developed. The authorities we have consulted have referred to the plaintiff in a suit of this kind as a "stakeholder," a "mere stakeholder," a "mere depositary," and this Court, in Florida East Coast Ry. Co. v. Eno, supra, used the term "mere innocent stakeholder." We understand a stakeholder to be a person in possession of a fund with a naked authority to deliver it upon a contingency or the occurrence or nonoccurrence of an event. The adjective "mere" when so applied probably means "only this and nothing more."

Assuming that plaintiff occupied such a position, the stake was its own creation. It was established by the simple mathematical process of subtracting the corporation's share of a commission earned for it by the defendants. Upon failing to distribute the remainder to the satisfaction of the two claim-

ants, sales manager and salesman, the corporation proclaimed itself in its bill "a mere stakeholder" and prayed for a decree exonerating it "from any . . . liability, obligation or responsibility to said defendants . . . respecting said fund."

It is passing strange that the plaintiff should attempt to assume such a perfectly detached attitude when the defendants are its employees, one or both entitled to compensation for the services which fetched the original fee for its benefit. We think the plaintiff was not "a mere stakeholder" but an employer with a direct obligation to its employees, or one of them, which it recognized in its effort to distribute the money. The underlying responsibility sprang from this relationship, and it is difficult to see how the plaintiff, an employer, could disclaim any intelligence of the manner of properly compensating its own employees, particularly in view of its own effort to apportion the agents' share of the commission. As we have stated, the plaintiff's position is that it has a fund which two persons claim, although it is actually indebted for an employment, and it wishes to escape further responsibility and difficulty by letting the court decide to what extent each employee shall share, if at all, in the total amount to be distributed.

We think there was an independent liability on the part of the plaintiff, a liability to compensate an employee, and this ingredient is closely allied with the element of interest. We have given the fourth condition from Pomery. We quote the one in American Jurisprudence which is nearly identical: (4) the plaintiff must have incurred no independent liability to either of the claimants, but *must stand indifferent between them merely as a stakeholder.*" (Italics supplied.)

It seems to us there was a definite obligation from the plaintiff employer to his employees, or one of them, and that it could not "wash its hands" of that, for the "complainant cannot cast upon the claimants the burden of settling the question of whether the complainant has obligated himself to one of the parties. *The complainant is supposed to know whether or not he has.*" "The remedy . . . is based upon the theory that conflicting claimants should litigate their claims among themselves without involving the stakeholder in their

disputes." (Italics ours.) Jax Ice & Cold Storage Co., et al., v. South Florida Farms Co., 90 Fla. 593, 109 So. 212. 48 A.L.R. 957. See also Fogg v. Goode, 78 Fla. 138, 82 So. 614. But why should the plaintiff be absolved when it was responsible for compensating its own employees and should be sufficiently informed of the amount from the very nature of the relationship?

From a study of this record we are not convinced that this employer was only a stakeholder, hence should have been spared the annoyance of litigation.

Aside from the rule involving identity, which we need not discuss in this case, the court seems to have recognized and applied the principles stated by the authors of American Jurisprudence, Pomeroy's Equity Jurisprudence, and Corpus Juris. Bearing in mind the object and purpose of the remedy and following the way already charted by our own pronouncements, we can only arrive at the conclusion that it was not available to the plaintiff. Plaintiff was not so disinterested, indifferent, or detached as to justify its insulation against the double vexation of suits against it by its own employees for recovery of compensation for services from which it benefited, services for which, so far as we can see, it was liable when the sale was effected, regardless of the accumulation in its hands of the money from the seller to cover the broker's commission.

Reversed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.