ROTHENBERG, J.
 

 This is a consolidated appeal following an interpleader proceeding filed by Bank of America (“the Bank”). The factual and procedural predicate is as follows. In 1998, Keiko Machida (“Machida”) opened an IRA, worth in excess of $1,500,000.00, with MBNA America Bank, which later merged with the Bank.
 
 [1]
 
 Machida subsequently married Errol Rainess (“Rainess”) on August 22, 2001, and died shortly thereafter on November 4, 2001. The distribution of Machida’s IRA proceeds is the primary issue on appeal.
 

 Machida intended for the distribution to be governed by the designation of beneficiaries she outlined in her IRA application (“IRA Simplifier”). Upon opening the IRA, Machida completed and submitted an IRA Simplifier to the Bank. The IRA Simplifier consisted of a three-part form: one original and one carbonized copy, both of which were to be retained by the Bank and scanned into its database, and another carbonized copy that was to be returned to the account holder.
 

 Upon being notified of Machida’s death, the Bank discovered that it had misplaced its copies of Machida’s IRA Simplifier, and that it had never scanned them into its database. The Bank’s comprehensive search for the records proved unavailing. The Bank did, however, locate a computer entry in its Customer Information System, which reads, “REC SIGNED SIMP PRIMARIES ERROL RAINESS HUSBAND 50%, HIDEKAZU YAMASHITA NEPHEW 50%.”
 

 Based on this entry, the Bank took the position that Rainess was entitled to fifty percent of the IRA, and that the other fifty percent should be distributed to Hidekazu Yamashita (“Yamashita”), Machida’s nephew. Rainess, on the other hand, claimed entitlement to the entire fund, relying on what he alleges is a photocopy of Machi-da’s IRA Simplifier, which lists Rainess as the IRA’s sole primary beneficiary.
 
 [2]
 
 The
 
 *508
 
 Bank questioned the photocopy’s authenticity because it was incomplete and ambiguous. As a consequence, the Bank refused to distribute the IRA in accordance with designations in the document presented by Rainess.
 

 During a series of phone calls that took place in May and June of 2002, the Bank informed Rainess that pursuant to the IRA agreement and the Certificate of Deposit Account Terms and Conditions that governed the individual certificates of deposit that comprised the IRA, Rainess needed to submit an original or certified copy of Machida’s death certificate before any action could be taken as to the IRA. Accordingly, the Bank requested a certified copy of the death certificate; Rainess, however, refused to provide one.
 

 By April of 2003, the Bank informed Rainess that if it did not receive an original or certified copy of the death certificate and an original carbon copy of the IRA Simplifier, it would contact Yamashita and inform him of his options as co-equal beneficiary. The record reflects that Rainess purposely refused to submit a certified copy of Machida’s death certificate in an effort to prevent the Bank from disbursing the funds in accordance with its Customer Information System, contrary to his wishes. Consequently the Bank submitted instructions to both Rainess and Yamashita regarding their rights as coequal beneficiaries.
 

 By the summer of 2004, after neither Rainess nor Yamashita submitted the required documentation necessary for distribution, the Bank filed a Petition for Order to Reopen Estate Administration and for Determination of Beneficiaries on July 16, 2004. On February 5, 2005, the trial court reopened the estate and directed the Bank to file an adversary proceeding. The Bank complied, interpleaded the entire IRA to establish its lawful beneficiaries, and named Rainess and Yamashita as respondents. After filing the interpleader action, the Bank moved to withdraw, but the trial court denied the Bank’s motion.
 

 Rainess answered and filed a cross-petition against Yamashita, asserting sole rights to the IRA. Rainess also filed an answer and cross-claim in his capacity as the personal representative of Machida’s estate, arguing that if the trial court were unable to establish Machida’s intent in determining the beneficiaries, the entire IRA should be distributed to the estate. Yama-shita responded to the Bank’s interpleader action and the cross-claims of Rainess and the Estate, asserting entitlement to one-half of the IRA proceeds. Lastly, Rainess, as a third party beneficiary of the IRA agreement, filed a counter-petition against the Bank asserting claims of conversion, breach of fiduciary duty, negligence, and breach of contract. Although the Bank moved for final summary judgment on Rainess’ tort claims, and a hearing was conducted, the trial court declined to rule on the motion and the case proceeded to trial.
 

 At trial, the Bank presented testimony from a former IRA Department supervisor who examined the document Rainess claims was a copy of Machida’s IRA Simplifier. The supervisor concluded that the document was both incomplete and ambiguous, and that if the Bank would have received a copy like the one proffered by Rainess, it would have been rejected and a notation would have been placed on Machi-da’s file. Because no such notation was present in Machida’s account, the supervisor concluded that the copy proffered by Rainess could not have been the same copy received by the Bank. The Bank also presented testimony from an expert forensic
 
 *509
 
 document examiner, who noted several imperfections on the face of the document, and determined that they could have been the result of Xerox forgery.
 

 At the trial’s conclusion, the trial court issued final judgment: (1) awarding equal distribution of Machida’s IRA proceeds to Rainess and Yamashita; (2) denying Rainess’ motion for prejudgment interest; (3) awarding Rainess post-judgment interest; (4) granting summary judgment in favor of the Bank on Rainess’ tort claims; and (5) ruling in favor of the Bank on Rainess’ contract claim. The trial court also denied the Bank’s motion for attorney’s fees.
 

 Rainess appeals the trial court’s: (1) decision to allow the Bank to interplead the entire IRA account; (2) denial of his motion for prejudgment interest; and (3) consideration of “secondary evidence” regarding the contents of the IRA Simplifier. The Bank cross-appeals the trial court’s: (1) award of post-judgment interest; and (2) order denying the Bank’s motion for attorney’s fees. The two appeals were consolidated for all purposes by this Court. We affirm all of the trial court’s findings, except the award of post-judgment interest to Rainess.
 

 The trial court did not err by allowing the Bank to interplead the entire IRA account.
 

 On appeal, Rainess contends that the trial court erred in permitting the Bank to interplead the entire IRA account because the Bank did not satisfy three of the “four common law requirements” necessary for the maintenance of an interpleader action, at least with respect to what Rainess refers to as his “uncontested half’ of the IRA. In support, Rainess relies on
 
 Sea Management Service, Ltd. v. Club Sea, Inc.,
 
 512 So.2d 1025, 1026 (Fla. 3d DCA 1987), in which this Court quoted the common law standard for an interpleader action articulated by the First District in
 
 Riverside Bank of Jacksonville v. Florida Dealers & Growers Bank,
 
 151 So.2d 834 (Fla. 1st DCA 1963),
 
 [3]
 
 as follows:
 

 [Interpleader is not appropriate unless four conditions are satisfied: (1) the claims must be dependent or have a common origin; (2) the same thing, debt (or duty) or stake must be claimed by the defendants; (3) the plaintiff must have no interest in the subject matter-that is, in strict interpleader as distinguished from a suit in the nature of interpleader; and (4) the plaintiff must be in a position of indifference, having incurred no independent liability to either of the claimants, but must stand indifferent between them merely as a stakeholder, and it must appear that no act on his part has caused the embarrassment of conflicting claims and the peril of double vexation.
 

 The common law standard, however, has been superseded by the enactment of Florida Rule of Civil Procedure 1.240, which states:
 

 Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claim of the several claimants or the titles on which their claims depend do not have common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of crossclaim
 
 *510
 
 or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties otherwise permitted.
 

 (emphasis added). The plain language of rule 1.240 clearly articulates but one requirement for the commencement of an interpleader action: that the stakeholder “is or may be exposed to double or multiple liability.” (emphasis added). In acknowledging that rule 1.240 superseded the four common law requirements, the First District in
 
 Zimmerman v. Cade Enterprises, Inc.,
 
 34 So.3d 199, 202 (Fla. 1st DCA 2010), expressly receded from its holding in
 
 Riverside,
 
 stating:
 

 In
 
 Riverside Bank of Jacksonville v. Florida Dealers & Growers Bank,
 
 151 So.2d 834 (Fla. 1st DCA 1963), a case predating rule 1.240, this court outlined four conditions to maintain an action in “strict interpleader,” which must appear from the pleadings: (1) the same thing, debt (or duty), or stake must be claimed by the defendants; (2) the claims must be dependent or have a common origin; (3) the plaintiff must have no interest in the subject matter; and (4) the plaintiff must be in a position of indifference, having incurred no independent liability to either of the claimants, but must stand indifferent between them merely as a stakeholder, and it must appear that no act on his part has caused the embarrassment of conflicting claims.
 
 Id.
 
 at 836. Florida courts continue to recite the four common law requirements for interpleader.
 
 See, e.g., Prince v. Underhill,
 
 670 So.2d 92, 94 (Fla. 5th DCA 1996);
 
 St. Mary’s Traditional Roman Catholic Church, Inc. v. Eight Hundred, Inc.,
 
 779 So.2d 317, 319 (Fla. 2d DCA 1999). However, the only absolute requirement remaining under rule 1.240 is that the stakeholder “is or may be exposed to double or multiple liability” for competing claims to a single fund.
 
 See
 
 32 Fla. Jur.2d
 
 Interpleader
 
 § 2 (2003);
 
 Hagendorfer v. Ap-pelquist & Ripley, Inc.,
 
 529 So.2d 343 (Fla. 1st DCA 1988);
 
 Newkirk Constr. Corp. v. Gulf Cnty.,
 
 366 So.2d 813 (Fla. 1st DCA 1979). A party may not object to interpleader on the grounds that one of the remaining three common law requirements is not met.
 
 See, e.g., Motzkin v. Shearson Lehman Bros.,
 
 611 So.2d 592, 593 (Fla. 4th DCA 1993) (reiterating that the language of rule 1.240 provides that a party cannot object to joinder in interpleader on any ground except “where a plaintiff is faced with conflicting claims that may result in double or multiple liability”);
 
 Bache Halsey Stuart Shields, Inc. v. Witous,
 
 411 So.2d 1324 (Fla. 2d DCA 1982) (noting that under rule 1.240 a plaintiff may proceed in interpleader even when he has caused the conflicting claims or is interested in the stake).
 

 (emphasis added);
 
 see also
 
 4 Fla. Prac., Civ. P.R. 1.240 (2011-2012) (opining that it is “something of an enigma” that Florida courts continue to cite to the four common law requirements).
 

 We therefore conclude that the sole requirement for the maintenance of an interpleader action is that the stakeholder “is or may be exposed to double or multiple liability” with respect to the interplead-ed fund or res. Importantly, as is demonstrated by the inclusion of the word “may,” rule 1.240 is forward-looking, contemplating interpleader based on potential liability. Such potential is, however, constrained by reason and good faith. While a stakeholder need not assess the threat of multiple liability to a level of certainty or even probability, he must have a “reasonable” and “bona fide fear” of exposure to multiple liability at the time interpleader is sought.
 
 Newkirk Constr. Corp. v. Gulf Cnty.,
 
 366 So.2d 813, 816 (Fla. 1st DCA
 
 *511
 
 1979) (citing
 
 John Hancock Mut. Life Ins. Co. v. Beardslee,
 
 216 F.2d 457 (7th Cir.1954)).
 
 [4]
 
 In other words, a stakeholder may not interplead based on an unreasonable fear of a merely hypothetical claim that lacks merit grounded in law or in fact.
 

 Having clarified the standard for maintaining an interpleader action, we now address whether the Bank had a reasonable and bona fide fear of being exposed to multiple liability with respect to the half-share Rainess claims was improperly in-terpleaded by the Bank. Rainess contends that the Bank was not exposed to multiple liability with respect to his half of the IRA account because the Bank and Yamashita never disputed that Rainess was entitled to a fifty percent share. Therefore, Rainess argues that it was improper for the Bank to interplead that portion of the IRA.
 

 Rainess’ argument, however, ignores the record, which reflects that, at the time the Bank interpleaded the fund, the Bank had a reasonable and bona fide fear of being exposed to multiple liability for the entire IRA based on a potential claim from Ma-chida’s estate. In its Petition for Order to Reopen Estate Administration and for Determination of Beneficiaries, the Bank identified three possible alternatives for distributing the IRA:
 

 (i) fifty percent (50%) to Yamashita and fifty percent (50%) to Rainess, pursuant to the 1998 Designation; (ii) one hundred percent to the decedent’s estate, assuming neither the 1998 Designation nor the Alleged Designation is valid; or (iii) one hundred percent (100%) to Rainess, pursuant to the Alleged Designation.
 

 (emphasis added). The second alternative was clearly viable, given the evidentiary deficiencies regarding Machida’s intent. Because the Bank misplaced Machida’s IRA Simplifier, the only evidence the Bank had with regard to Machida’s intent was a computer entry. Further, the authenticity of the alleged copy of Machida’s IRA Simplifier produced by Rainess was vigorously challenged. Thus, it was reasonably possible for a finder of fact to conclude that neither the computer entry nor the document produced by Rainess established Ma-chida’s intent, in which case Machida’s estate would be left with a superior claim to the IRA proceeds. Consequently, at the time the Bank interpleaded the fund, it was justifiably concerned about a potential claim by Machida’s estate as to the entire IRA account.
 

 Not only was a viable claim on behalf of Machida’s estate reasonably possible, but one was actually filed. Rainess filed a cross-claim in his capacity as the personal representative of Machida’s estate, stating that if the trial court were unable to establish Machida’s intent as to the beneficiaries, the entire IRA should be distributed to the estate.
 

 Rainess attempts to undercut the significance of the estate’s claim to the IRA in two respects. First, he argues that since the claim was pled in the “alternative,” it did not constitute a “conflicting” claim, and, therefore, there was no potential for multiple liability stemming from the estate’s claim. Second, he argues that the Bank interpleaded the IRA long before Rainess asserted a claim on behalf of the estate, and, therefore, at the time the action was filed, there was no justification for interpleading the entire IRA account. Rainess’ arguments, however, miss the
 
 *512
 
 point, as the efficacy of an interpleader action is not governed by the wording, or even the eventual filing, of a conflicting claim, but by the reasonable potential for, and bona fide fear of, multiple liability at the time the interpleader action is filed. Having established that the Bank was exposed to, and had a bona fide fear of, a reasonable potential for multiple liability with respect to the entire IRA account at the time it sought interpleader, we conclude the trial court did not err in allowing the Bank to interplead the entire IRA account.
 

 The trial court did not err in denying Rainess’ claim for prejudgment interest.
 

 Rainess challenges the trial court’s denial of his claim for prejudgment interest on the principal amount of his “uncontested half’ of the IRA. Rainess claims that he is entitled to prejudgment interest as a result of being awarded fifty percent of Ma-chida’s IRA. Rainess is incorrect.
 

 “Florida has adopted the position that prejudgment interest is [an] element of pecuniary damages.”
 
 Argonaut Ins. Co. v. May Plumbing Co.,
 
 474 So.2d 212, 215 (Fla.1985) (emphasis added). A plaintiff is entitled to prejudgment interest as a matter of law when he prevails on a claim and “a verdict liquidates damages on a plaintiffs out-of-pocket, pecuniary losses.”
 
 Id.
 
 (emphasis added). As has been established, Rainess did not prevail on any of his claims below, and was not awarded any damages. While the trial court determined Rainess to be a co-equal primary beneficiary of Machida’s IRA, that determination did not constitute an award of damages, as interpleader is not an action for damages. Rather, it has been established that, “[e]ven after the adoption of rule 1.240, interpleader remains an equitable remedy governed by equitable principles.”
 
 Zimmerman,
 
 34 So.3d at 202 (citing
 
 Wassman v. Travelers Cas. & Sur. Co.,
 
 797 So.2d 626, 631-32 (Fla. 5th DCA 2001)). Thus, the trial court did not err in denying Rainess’ claim for prejudgment interest.
 

 The trial court did not err in considering secondary evidence regarding the contents of the IRA Simplifier, and its determination that Rainess and Yamashi-ta were co-equal primary beneficiaries was supported by substantial competent evidence.
 

 Rainess argues that the alleged photocopy of Machida’s IRA Simplifier satisfied the best evidence rule, and that, consequently, the trial court erred in considering the notation in the Bank’s computer information system as secondary evidence in determining the contents of Machida’s IRA Simplifier.
 

 Since the contents of the IRA Simplifier gave rise to legal rights, the process of proving them is governed by the best evidence rule, which is codified in sections 90.952-.954, Florida Statutes (2009).
 
 See Griem v. Zabala,
 
 744 So.2d 1139, 1140 (Fla. 3d DCA 1999). Section 90.952 provides that “[e]xcept as otherwise provided by statute, an original writing ... is required in order to prove the contents of the writing.” Under the best evidence doctrine, admission of an “original” precludes consideration of secondary evidence as proof of the contents of the original.
 
 State v. Eubanks,
 
 609 So.2d 107, 109 (Fla. 4th DCA 1992) (“The best evidence rule requires that if original evidence is available, then no other evidence should be received which is merely substitutionary in nature.”). In the absence of an original, however, section 90.953(2) allows for the admission of a “duplicate” “to the same extent as an original, unless: ... [a] genuine question is raised about the authenticity of the original or any other
 
 *513
 
 document or writing.” Thus, if a duplicate is properly admitted under section 90.953, it also precludes consideration of secondary evidence. If, and only if, neither an original nor its equivalent is available, secondary evidence regarding the contents of the original can be admitted under section 90.954, which states, in relevant part: “The original of a writing ... is not required ... and other evidence of its contents is admissible when: ... (1) All originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith.”
 

 In this case, Rainess introduced what he claims is a photocopy of the IRA Simplifier executed by Machida. He argues that this copy is a “duplicate” of the original, and was, therefore, admissible to the same extent as the original, thus precluding admission of other evidence regarding the contents of the IRA Simplifier. We disagree because there was a genuine question raised about the authenticity of the “duplicate” presented by Rainess.
 

 The Bank presented the testimony of a former supervisor of its IRA department, who stated that the alleged copy submitted by Rainess was ambiguous and incomplete, most notably because it did not identify primary beneficiaries for the full amount of the IRA. She also explained that pursuant to the Bank’s comprehensive, written procedures, associates were charged with reviewing incoming IRA Simplifiers for completeness, and that if they had received an ambiguous or incomplete IRA Simplifier, like the copy proffered by Rainess, such a deficiency would have been noted, and the IRA Simplifier would have been returned to Machida for correction. The supervisor noted that Machida’s account lacked any such notation, and, therefore, concluded that the copy proffered by Rainess could not have been the copy received by the Bank.
 

 Question: So is it your position that [the document proffered by Rainess] must not have been received back in 1999?
 

 Answer: Yes.
 

 Question: Can you elaborate on that?
 

 Answer: Part of the process when we get IRA beneficiary designations is that the percentages have to total a hundred percent. And in lieu of that, we would contact the customer, comment the account, send them a new IRA simplifier with a letter stating that we need clarification on their position.
 

 Question: So just to be clear, if this actually would have been received in this manner with these notations on it originally when the document was set up, it would not have been keyed into the system as fifty percent primary, fifty percent contingent?
 

 Answer: That’s correct.
 

 Question: You would have sent back saying, Mrs. Machida, we need further clarification.
 

 Answer: That’s correct.
 

 In addition, the Bank presented the testimony of an expert forensic document examiner. With regard to the document proffered by Rainess, the document examiner opined “there is some indication that put me off about this document.” More specifically, he stated:
 

 There are some indications, especially in that particular area, that a Xerox forgery could have taken place.... To the left of the five and 50 there is an area of confusion, a blurred area that I have seen in past cases that were indicative of some manipulation of the document as a Xerox forgery.
 

 While the document examiner stated that he could not definitively determine that the copy was a forgery, he stated, with regard to the imperfection in the docu
 
 *514
 
 ment, “that is certainly one of the indicators I have found before. And this could have been the result of manipulation, yes.”
 

 We find that the totality of this evidence was legally sufficient to create a genuine question regarding the authenticity of the duplicate. Thus, the trial court properly concluded that the document introduced by Rainess was not admissible under section 90.953 “to the same extent as an original,” meaning that its admission into evidence did not preclude consideration of secondary evidence in determining the contents of the original. We note, however, that while Rainess’ document was not admissible under section 90.953, it was clearly admissible, and ultimately admitted, under section 90.954 as secondary evidence.
 
 See Garcia v. Lopez,
 
 483 So.2d 470, 471 (Fla. 3d DCA 1986) (“Section 90.954 is broader than section 90.953-a copy which is not admissible under section 90.953 as a duplicate may still be admissible under section 90.954.”).
 

 Having established that the original copy of the IRA Simplifier was lost or misplaced, and that there was no equivalent of the original proffered, the trial court, pursuant to section 90.954, properly admitted the Bank’s secondary evidence regarding the contents of Machida’s IRA Simplifier. Based on this secondary evidence, which is outlined below, the trial court determined that Rainess and Yama-shita were co-equal primary beneficiaries.
 

 First, the Bank established that it received Machida’s IRA Simplifier on January 8, 1999. The Bank also presented testimony that pursuant to its written procedures, associates at that time were instructed to enter beneficiary designations into its Customer Information System only after verifying the IRA Simplifier’s completeness. The Bank then introduced a computer entry outlining Machida’s designation of beneficiaries from its Customer Information System, which reads: “REC SIGNED SIMP PRIMARIES ERROL RAINESS HUSBAND 50%, HIDEKAZU YAMASHITA NEPHEW 50%.” The Bank testified that this entry was created by Michelle Druez, who was a highly trained “resident expert ... in terms of setting up and providing IRA accounts and providing training to other associates.” Based on this record, we find that the trial court’s determination that Machida designated Rainess and Yamashita as co-equal fifty percent beneficiaries was supported by substantial competent evidence.
 

 Given our affirmance of the trial court’s finding that Rainess and Machida were coequal primary beneficiaries, we need not reach Rainess’ remaining arguments regarding the claims made in his counter-petition and the trial court’s denial of his motion for leave to add a claim for punitive damages, as these claims were dependent on a finding that the Bank improperly withheld his fifty percent share and erred by impleading the entire IRA account.
 

 The trial court did not err in denying the Bank’s motion for attorney’s fees and costs.
 

 On cross-appeal, the Bank contends the trial court erred in denying its motion for attorney’s fees and costs. The Bank argues that it was a disinterested stakeholder that was not responsible for creating the conflicting claims and was therefore entitled to attorney’s fees.
 

 To be entitled to attorney’s fees in an interpleader action, a stakeholder must “prove his total disinterest in the stake he holds other than that of bringing it into court so that conflicting claims thereto can be judicially determined” and “show that he did nothing to cause the conflicting claims or to give rise to the peril of double vexation.”
 
 Wolf v. Horton,
 
 322 So.2d 71, 73 (Fla. 3d DCA 1975)
 
 *515
 
 (emphasis added) (citing
 
 Davis v. Davis,
 
 301 So.2d 154, 157 (Fla. 3d DCA 1974)). Although the trial court concluded that the Bank was a disinterested stakeholder, it denied the Bank’s motion for attorney’s fees upon determining that its “lax record-keeping practice prolonged unnecessarily this litigation.” We agree with the trial court’s assessment.
 

 The contents of Machida’s IRA Simplifier were dispositive of the primary issue in contention, namely who was entitled to what portion of the IRA. It is therefore clear that the Bank’s misplacement of the IRA Simplifier contributed significantly to the commencement and litigation of the claims below. If the Bank had scanned the IRA Simplifier and properly maintained it in its records, as it was obligated to do, the document would have precluded the conflicting claims, or easily disproved any claim inconsistent with the designation of beneficiaries in the IRA Simplifier. Therefore, it cannot be said that the Bank did nothing to contribute to the conflicting claims. Accordingly, we affirm the trial court’s denial of the Bank’s motion for attorney’s fees.
 

 The trial court eired in awarding post-judgment interest to Rainess.
 

 Post-judgment interest is governed by section 55.03(2), Florida Statutes (2009), which states:
 

 Any judgment for money damages or order for a judicial sale and any process or writ directed to a sheriff for execution shall bear, on its face, the rate of interest that is payable on the judgment. The rate of interest stated in the judgment accrues on the judgment until it is paid.
 

 Section 55.03(2), by its plain language, applies only to: (1) a judgment for money damages; (2) an order for a judicial sale; and (3) any process directed to a sheriff for execution. As explained above, Rainess was not awarded “damages” in this case, and the latter two categories are clearly inapplicable to this litigation.
 
 See also Gay v. Beary,
 
 758 So.2d 1242, 1245 (Fla. 5th DCA 2000) (holding that “section 55.03 applies expressly and literally to ‘judgments obtained against a party not property held pending completion of forfeiture proceedings”). We therefore reverse the trial court’s award of post-judgment interest.
 

 We decline to specifically address any of the remaining arguments on appeal based on our finding that they are without merit.
 

 Affirmed in part, reversed in part.
 

 [1]
 

 . For purposes of clarity, MBNA and the Bank will be jointly referred to as "the Bank.”
 

 [2]
 

 . Rainess contacted the Bank to inform it of Machida’s passing in May of 2002. By June of 2002, the Bank had advised Rainess that it had misplaced the IRA Simplifier, and by September 2002, the Bank had completed an “exhaustive search” for it. Despite the ongoing dispute with the Bank over the contents of the original IRA Simplifier, Rainess did not
 
 *508
 
 fax his purported photocopy of it until February 5, 2003.
 

 [3]
 

 .
 
 Superseded by Rule,
 
 Florida Rule of Civil Procedure 1.240 (1993),
 
 as recognized in Zimmerman v. Cade Enterprises, Inc.,
 
 34 So.3d 199, 202 (Fla. 1st DCA 2010).
 

 [4]
 

 . The Florida interpleader rule is virtually identical to Federal Rule 22(a), and cases interpreting the federal rule are persuasive in cases arising under the Florida rule.
 
 Zimmerman,
 
 34 So.3d at 201-02.