NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RED BERYL, INC., a Nevada corporation, )
                              )
     Appellant,               )
                              )
v.                            )     Case No. 2D14-4092
                              )
SARASOTA VAULT DEPOSITORY, INC.; )
PRIVATE CAPITAL GROUP, INC., a Utah )
corporation; TINA NIELSON, an individual; )
SUMMIT DEVELOPERS, LLC, an Arizona )
limited liability company; DWAYNE )
SEITER, an individual; BRANDON )
BENTLEY, an individual; KIM PURCELL, )
an individual; KRIS PURCELL, an )
individual; DAVID A. KAHN, an individual; )
CHELLE HOLDINGS, LLC, a New York )
limited liability company; LORA )
MORGENSTERN, an individual; ENTRUST )
ARIZONA FBO GLEN FORTHUM #10874; )
NORMAN STEINER, an individual; )
JONATHAN K. FOWLER, an individual; )
HEATHER D. FOWLER, an individual; )
THE ELDEN & CAROL GARDNER FAMILY )
TRUST DTD 12/11/1989; PRIVATE )
CAPITAL GROUP DIVERSIFIED FUND, )
LLC, a Utah limited liability company; )
VAN HADLOCK, an individual; and )
WENDY HADLOCK, an individual, )
                              )
     Appellees.              )
_____ )

Opinion filed October 9, 2015.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Sarasota County;
Charles E. Williams, Judge.

Dale T. Golden of Golden Scaz Gagain, PLLC, Tampa, for Appellant.

R. John Cole, II, of R. John Cole, II, & Associates, P.A., Sarasota, for Appellee Sarasota Vault Depository, Inc.

No appearance for remaining Appellees.

ALTENBERND, Judge.

Inside the vault at Sarasota Vault Depository, Inc., there is a lock box purported to contain more than $5,000,000 in rare, red beryl gems. Sarasota Vault claims no interest in these gems, but many of the remaining parties in the style of this case do. Sarasota Vault filed a complaint seeking to interplead these gems or, in the alternative, to obtain a declaratory judgment as to the rights of the parties to these gems. The trial court entered a nonfinal order that partially granted a motion for summary judgment on the issue of interpleader. The order does not place the gems in the registry of the court, but it grants the request for interpleader to the extent that Sarasota Vault is required to secure and hold the gems until further order of the court. The trial court intends to conduct evidentiary proceedings to determine the rights of the parties. The trial court has not discharged Sarasota Vault from any liability and has not dismissed it as a party.

Red Beryl, Inc., filed a notice of appeal challenging this order. It argues primarily that interpleader is improper because Sarasota Vault, by the terms of its rental agreement, is not in possession of the gems. In essence, it argues that Sarasota Vault is in possession only of the vault and lock box in which the gems are held. After ordering supplemental briefing on the matter, and as explained later in this opinion, we

- 2 -

treat the notice as a petition for writ of common law certiorari. We conclude that the trial court has not departed from the essential requirements of the law by entering an order that allows the action for interpleader to proceed and temporarily secures the gems in the vault under the supervision of the court. As explained later, the circumstances surrounding the lock box are far more complex than the rental agreement. Documents in addition to the rental agreement seem to give Sarasota Vault greater custodial obligations for these gems. As a practical matter, even if Sarasota Vault has possession only of the lock box, the documents in this case do not give any one party an undisputed right of access to its contents. Sarasota Vault disavows any interest in the contents of the lock box. The court properly accepted an interpleader of the lock box and restricted access to its contents. The fact that Sarasota Vault might ultimately have some monetary liability to one or more of the defendants due to its handling of the gems does not alter the fact that it has no claim to or interest in the gems themselves.

## I. THE ALLEGATIONS REGARDING OWNERSHIP AND POSSESSION OF THE GEMS

Sarasota Vault is a private company in Sarasota that rents lock boxes to customers for a monthly fee.[1] As described in greater detail later in this opinion, it has entered into rental agreements for the lock box in this case with at least two different entities. The most recent of these is with Red Beryl, a Nevada corporation, and its purported agent, Tina Nielson. This standardized rental agreement claims that Sarasota Vault does not have "custody" or "control" of the contents, is not responsible for the contents, and is a lessor of the box and not a "warehouseman." The rental

---

[1]At this stage of the proceedings, the "facts" are based on the contents of the record, which is limited and does not contain evidence comparable to the testimony of a trial.

agreement provides that it is "not intended to, nor does it in any way, create a bailment between the parties" except in the case of default or failure to pay the rent by the lessee. It further provides that: "Tenant has full rights to privacy, and Landlord does not want to know the nature, quantity, quality or value of the Contents of the Box."

Despite this contractual language in the rental agreement, the record reflects that Sarasota Vault also issued at least four separate documents entitled "Safekeeping Receipt." Each of these documents confirms that Sarasota Vault's "client" has "deposited" with Sarasota Vault one thousand "Red Emerald Gemstones," totaling 298 carats in weight and valued at $5,005,023. Each receipt recites that Sarasota Vault "stand[s] ready to confirm safekeeping by telephone or facsimile, to any inquiring bank, or authorized representative, and will transfer this Original Safekeeping Certificate with written approval of [its] Client." Thus, these receipts seem to create relationships regarding these gems beyond the mere rental of an empty, secret box to Red Beryl. It is doubtful that the receipts are each a complete transfer of the preceding receipt.

In September 2008, Sarasota Vault entered into the first rental agreement of the lock box with an individual who is not a party to this action. It issued the original safekeeping receipt for these gems to this individual.[2] In June 2009, the individual issued a release of the gems to either Rex Harris, the purported "legal owner" of the gems, or a designated agent of Mr. Harris. But Rex Harris apparently did not enter into a new rental agreement or obtain a transfer of the safekeeping certificate.

---

[2]It is worth noting that neither the trial court nor this court has inspected this lock box. All of the parties seem to agree that the box contains valuable gems, but that fact is not independently established in this record.

- 4 -

Instead, at that time, Tina Nielson, the daughter of Mr. Harris and a purported agent for Red Beryl, asked Sarasota Vault to transfer the gems to Red Beryl with a new safekeeping receipt. Red Beryl and Ms. Nielson then entered into the second rental agreement with Sarasota Vault to lease the lock box, and Sarasota Vault issued a second safekeeping receipt confirming that the gems had been deposited by "its client, Red Beryl, Inc." If this was done with written approval of the first client, that fact is not clear from our record.

Next, in July 2010, Patrick Lewis, holding himself out as an agent of Red Beryl, asked Sarasota Vault to issue a third safekeeping receipt to Progress Solutions, LLC, another Nevada company. At the same time, Sarasota Vault also received a document from Progress Solutions titled "Revised Resolution to Borrow," which stated that Progress Solutions wished to "lease" the gems to a third party. The document was signed by Rex Harris, Tina Nielson, and Patrick Lewis, and it authorized Mr. Lewis to sign, execute and endorse "all lease documents" that might be required to lease the gems. Sarasota Vault issued its third safekeeping receipt for these gems to Progress Solutions on July 6, 2010. Apparently, Red Beryl does not regard this safekeeping receipt to be a full transfer of its earlier receipt.

Just two weeks later, Mr. Lewis—allegedly still holding himself out as an agent of Red Beryl—asked Sarasota Vault to issue yet a fourth safekeeping receipt, this time to Summit Developers, LLC, an Arizona development company. He also asked Sarasota Vault to endorse a document titled "Confirmation of Blocking of Assets" (the blocking agreement), which already had been signed by representatives of both Summit Developers and Private Capital Group (PCG), a Utah corporation. Summit Developers

had apparently borrowed $400,000 from PCG and various other lenders (collectively, the lenders),[3] and had secured the loan in part with some of the gems located in the vault.[4] Despite the fact that Sarasota Vault had just issued a receipt for all of these gems to Progress Solutions, it issued the fourth safekeeping receipt to Summit Developers on July 21, 2010. If Progress Solutions gave written approval for this transfer, that fact is not apparent from this record.

Sarasota Vault also signed the blocking agreement, in which it represented that the gems were "reserved and blocked" for the benefit of PCG for one year pending payment of the promissory note by Summit Developers to PCG. Sarasota Vault agreed to "facilitate delivery" of the gems to PCG upon receipt of a written notice of default by Summit Developers.

Summit Developers subsequently defaulted on the promissory note. In early 2011, PCG provided Sarasota Vault with written notice of the default and requested delivery of the gems. Sarasota Vault did not deliver the gems to PCG. In September 2011, the lenders filed an action against Summit Developers in Utah state court for breach of the loan agreement. The lenders also named Sarasota Vault as a defendant, alleging conversion and breach of contract for failing to facilitate the delivery

_____

[3]PCG, Summit Developers, and these lenders—Dwayne Seiter, Brandon Bentley, Kim and Kris Purcell, David A. Kahn, Chelle Holdings, LLC, Lora Morgenstern, Entrust Arizona FBO Glen Forthum #10874, Norman Steiner, Jonathan K. and Heather D. Fowler, The Elden and Carol Gardner Family Trust DTD 12/11/1989, Private Capital Group Diversified Fund, LLC, and Van and Wendy Hadlock—are all defendants in the interpleader action below. None of these parties have appeared in this appeal, and they are thus appellees by operation of Florida Rule of Appellate Procedure 9.020(g).

[4]Although the parties do not fully explain this, according to the security agreement for the loan and an attached inventory list, only about one hundred of the one thousand gems that are allegedly in the vault were partial collateral on the loan. Their value is not included on the inventory list.

of the gems pursuant to the blocking agreement.  At some point after this, Red Beryl attempted to gain access to the vault and lock box, but Sarasota Vault did not allow it. In September 2012, Red Beryl sent a demand letter to Sarasota Vault in which it threatened suit for civil theft and treble damages if Sarasota Vault did not give it access to the gems.

## II.  THE ACTION FOR INTERPLEADER

### A.  The Pleadings

Sarasota Vault filed its amended complaint for interpleader in 2013.  It named as defendants Red Beryl, Tina Nielson, Summit Developers, PCG, and the remaining lenders.  In its count for interpleader, Sarasota Vault alleged that it had no interest in the gems and wished to deliver them to whomever they lawfully belonged but, based on the alleged events and the conflicting claims to the gems, it could not make this determination without threat of litigation from the defendant claimants.  It asked the court to enter an order allowing it to transfer the gems into the court registry, releasing it of all liability to the claimants, discharging it from the action, and requiring the claimants to interplead and settle their respective rights to the gems among themselves.  In its alternative count for declaratory judgment, Sarasota Vault asked for a determination of who is entitled to possession of the gems.

The lenders filed an answer to Sarasota Vault's amended complaint for interpleader in which they brought counterclaims against Sarasota Vault, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion.  They also brought crossclaims against Red Beryl.

Red Beryl, meanwhile, filed simultaneous motions to dismiss and to "strike" the amended complaint for interpleader, arguing in both motions that interpleader was not proper because, according to the lease agreement for the vault, Sarasota Vault does not have possession of the gems and thus does not meet the definition of a "stakeholder" articulated by the Florida Supreme Court in Paul v. Harold Davis, Inc., 20 So. 2d 795, 796 (Fla. 1945). The trial court denied both motions. After Red Beryl filed a "motion to determine propriety of interpleader," in which it repeated the argument from its prior motions, the court entered an order denying the motion and explaining that if Red Beryl was seeking a judgment that Sarasota Vault was not entitled to interpleader, it should file a motion for summary judgment or judgment on the pleadings on that basis.

## B. The Parties' Motions for Summary Judgment and the Order on Review

Red Beryl filed a motion for summary judgment and again made the same argument regarding interpleader. It also argued that Sarasota Vault is not entitled to declaratory relief because it is seeking a declaration of the defendants' rights to the stake but not its own.

Sarasota Vault filed its own motion for summary judgment as to interpleader and its alternative count for declaratory relief. It argued that it is a proper stakeholder because it has actual possession or control over the gems, it has no interest in the gems, and it is exposed to multiple liability regarding the conflicting claims to the gems. It maintained that these are the only requirements for interpleader under the current rule.

After a hearing on the motions for summary judgment, the trial court entered a written order that allowed both counts to go forward on the merits. It found that an evidentiary hearing is needed to determine who is entitled to possession of the gems and accordingly denied summary judgment on the count for declaratory judgment. It found that interpleader is proper because Sarasota Vault has established that there are competing claims to the gems for which Sarasota Vault is exposed to multiple liability and that Sarasota Vault is a stakeholder with "actual possession" of the gems for purposes of interpleader. It ordered that the gems remain with Sarasota Vault for safekeeping until further order of the court. It also ordered that Sarasota Vault not be discharged from liability or dismissed from the proceedings until further order and that Red Beryl and PCG must interplead and litigate between themselves their respective rights to the gems. It denied Red Beryl's motion for summary judgment in its entirety. Red Beryl filed this appeal.

### III.  THE ORDER IS NOT APPEALABLE AS EITHER A NONFINAL OR FINAL ORDER

Red Beryl initially sought to appeal this order as either a nonfinal order determining the right to immediate possession of property pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(ii), or as a final order of interpleader. The order is not appealable as either.[5]

---

[5]We recognize that this conclusion is not consistent with the direct appellate review in Zimmerman v. Cade Enterprises, Inc., 34 So. 3d 199 (Fla. 1st DCA 2010). Zimmerman appears to involve an appeal in the same posture as this one. One of the claimants in Zimmerman appealed the trial court's order granting interpleader to the extent that the action was allowed to proceed and the plaintiff was required to place the stake into the court registry. Id. at 200-01. And although this fact is not explicitly addressed, the plaintiff does not appear to have been dismissed from the suit. See id.

As an initial matter, the portion of the order denying summary judgment on the alternative count for declaratory relief is nonfinal and is not appealable under rule 9.130(a)(3).  Likewise, that portion of the order is not a proper subject for certiorari review.  See, e.g., Miami-Dade Cty. v. Perez, 988 So. 2d 40 (Fla. 3d DCA 2008).

The portion of the order on the count for interpleader is also nonfinal: it expressly declines to release Sarasota Vault from the suit or from liability.  It is therefore not final as to either party, and it is not appealable as such.  Cf. Schnebelt v. Schnebelt, 710 So. 2d 147 (Fla. 4th DCA 1998) (holding that the order granting interpleader was final as to the stakeholder, who was dismissed from the suit, and affirming the order insofar as it required the remaining parties to interplead but concluding that the court was without jurisdiction to reach any other issues raised by those parties in the appeal). The trial court undoubtedly did not dismiss Sarasota Vault from the lawsuit or from liability because of the unusual factual circumstances in this case and the fact that several of the defendants have brought counterclaims against Sarasota Vault.  See, e.g., Rainess v. Estate of Machida, 81 So. 3d 504, 508 (Fla. 3d DCA 2012) (explaining that the trial court allowed interpleader to proceed but denied a motion to withdraw by the stakeholder who ultimately faced counterclaims).

This nonfinal, interlocutory order is not appealable as an order determining "the right to immediate possession of property" under rule 9.130(a)(3)(C)(ii).  Because the purpose of rule 9.130 is to "restrict the number of appealable nonfinal orders," we are obligated to interpret the rule narrowly.  See Travelers Ins. Co. v. Bruns, 443 So. 2d 959, 961 (Fla. 1984).  Thus, despite Red Beryl's assertion, the court did not make a

The First District did not address jurisdiction in Zimmerman, and it is likely that the jurisdictional question was never considered in that case.

- 10 -

determination regarding any of the parties' "right" to possess the gems. To the contrary, the court ordered that the gems remain in the vault for safekeeping pending the court's future determination of their rightful owner or owners.[6] See Walker v. Fla. Gas Transmission Co., 134 So. 3d 571, 573 (Fla. 1st DCA 2014); Perez, 988 So. 2d at 41 ("The effect of the order was simply to deny summary disposition of the parties' respective claims to immediate possession—not to determine those claims. The claims remain subject to determination at trial." (emphasis omitted)); see also Higgins v. Ryan, 81 So. 3d 588 (Fla. 3d DCA 2012) (concluding, in a published order, that an interlocutory order in which the trial court simply gave its "opinion" of ownership interests was not appealable under rule 9.130(a)(3)(C)(ii) and dismissing appeal for lack of jurisdiction).

If Red Beryl is entitled to review of the trial court's decision to take temporary supervision of these gems while the parties' rights to the gems are resolved, it must be by certiorari jurisdiction. See Fla. R. App. P. 9.030(b)(1)(B), (2)(A). We thus treat this appeal as a petition for writ of certiorari. See Fla. R. App. P. 9.040(c) (providing that where "a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought").

---

[6]When the court concluded that interpleader was proper, it explained that although it would normally order the stake to be deposited into the court registry, taking this course of action with gems had caused trouble for the clerk of court in the past. It therefore gave the parties the option of keeping the gems where they were or finding an independent receiver to take possession of them. The parties apparently did not elect to have an independent receiver take possession, and the court appropriately ordered that the gems remain in the vault. See, e.g., Rogers v. Publix Super Mkts., Inc., 575 So. 2d 214, 215 (Fla. 5th DCA 1990) ("Retention of funds by a trustworthy person in an action for interpleader is not unusual and avoids the clerk's fees."). Thus, for purposes of this appeal, these gems are under the supervision of the court just as if they were in the registry of the court.

## IV.  THE ORDER IS NOT A DEPARTURE FROM THE
## ESSENTIAL REQUIREMENTS OF THE LAW

A nonfinal, nonappealable order may be reviewable by certiorari jurisdiction in limited circumstances.  Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 454-55 (Fla. 2012).  The party seeking relief must demonstrate that the challenged order constitutes: (1) a departure from the essential requirements of the law; (2) resulting in material injury for the remainder of the proceedings; (3) that cannot be corrected on postjudgment appeal.  Id. at 455 (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004)); see also Parkway Bank v. Ft. Myers Armature Works, Inc., 658 So. 2d 646, 648 (Fla. 2d DCA 1995).  Red Beryl has not made this showing.

For purposes of this proceeding, we accept that Red Beryl, if it actually has a right of possession to these gems at this time, could suffer irreparable injury by having the gems held by the court.  Cf. Tetrault v. Calkins, 79 So. 3d 213, 215 (Fla. 2d DCA 2012) (explaining that an order denying a motion to discharge a lis pendens may cause harm not remediable on appeal because a lis pendens operates as a cloud on title that may constrain a petitioner's right to convey property).

Nevertheless, the trial court did not depart from the essential requirements of the law.  In actuality, Red Beryl is not claiming that it is aggrieved because the court took supervision of the lock box or its contents.  Its grievance is that it wants the right to immediately access the contents of the lock box.  So do many of the other defendants.  Red Beryl has not established in this record that it has such a clear right to the contents of the lock box that the court should deny interpleader and allow it exclusive access to the box.

Red Beryl asserts that the trial court departed from the essential requirements of the law when it allowed interpleader to proceed because Sarasota Vault does not fit the definition of a stakeholder in a decades-old supreme court case, Paul v. Harold Davis, Inc., 20 So. 2d 795 (Fla. 1945). In Paul, the supreme court explained that it "underst[oo]d a stakeholder to be a person in possession of a fund with naked authority to deliver it upon a contingency or the occurrence or nonoccurrence of an event." Id. at 796. Red Beryl argues that, pursuant to the express terms of the rental agreement, Sarasota Vault does not have "custody" or "control" of the gems and is not a bailee or "warehouseman" with naked authority to possess the gems or to deliver them to another party. It contends that Sarasota Vault thus does not fit the definition of a stakeholder set forth in Paul, and interpleader is not proper in this case.

As an initial matter, Red Beryl's argument is based on the questionable assumption that the terms of the rental agreement exclusively control Sarasota Vault's obligations regarding the lock box and its contents. As we have explained, the circumstances surrounding the lock box and its contents—and in particular, the four safekeeping agreements—suggest that this is not the case. But even assuming that Red Beryl's assumption is correct, Red Beryl's argument ignores the current law and the purpose for interpleader. Paul was decided before the common law requirements for strict interpleader were replaced by Florida Rule of Civil Procedure 1.240. See Zimmerman v. Cade Enters., Inc., 34 So. 3d 199, 202 (Fla. 1st DCA 2010); Joe Hatton, Inc. v. Conner, 247 So. 2d 782, 783-84 (Fla. 4th DCA 1971). Rule 1.240 provides that:

> Persons having claims against the plaintiff may be joined as
> defendants and required to interplead when their claims are
> such that the plaintiff is or may be exposed to double or
> multiple liability. It is not ground for objection to the joinder

that the claim of the several claimants or the titles on which their claims depend do not have common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants.

Id. (emphasis added).

Interpleader is a two-stage action. First, the trial court determines whether interpleader is proper—i.e., whether the plaintiff has stated a claim for interpleader— and second, the trial court determines who is actually entitled to the stake. See, e.g., N & C Props. v. Vanguard Bank & Tr. Co., 519 So. 2d 1048, 1050-51 (Fla. 1st DCA 1988). If the court determines that a claim for interpleader has been properly pleaded in step one, it may deposit the stake into the court registry or order alternative safekeeping. See, e.g., Bruce J. Berman & Peter D. Webster, Berman's Florida Civil Procedure § 1.240:5 (West's Fla. Prac. Series 2015 ed.). The court may also dismiss the plaintiff from the action and discharge the plaintiff from further liability regarding entitlement to the stake. See id. However, if the plaintiff faces liability to the claimants on theories that are independent from the entitlement to the stake, the court may keep the plaintiff in step two of the litigation to defend against those claims. See, e.g., Rainess, 81 So. 3d at 508.

Although some courts have continued to recite the four common law requirements for "strict" interpleader,[7] the only requirement to state a claim for

---

[7]To maintain an action in strict interpleader, the common law required that: (1) the claims to the stake were dependent or had common origin; (2) the same thing, debt, or stake was claimed by the defendants; (3) the plaintiff had "no interest in the subject matter—that is, in strict interpleader as distinguished from a suit in the nature of interpleader"; and (4) the plaintiff was in a position of indifference as to the claimants, "having incurred no independent liability to [any] of the claimants" and it appearing that "no act on his part . . . caused the embarrassment of conflicting claims and the peril of

- 14 -

interpleader that remains under rule 1.240 "is that the stakeholder 'is or may be exposed to double or multiple liability' for competing claims to a single fund." Brock v. Bowein, 99 So. 3d 580, 584 (Fla. 2d DCA 2012) (quoting Zimmerman, 34 So. 3d at 202). The current relevance of the earlier four requirements that applied under the common law before the adoption of rule 1.240 and the merger of law and equity in 1967 is not easily explained. But when the order of interpleader does not discharge the plaintiff of potential liability and the plaintiff remains a party to the modern proceeding, it is clear that the third and fourth requirements of the common law of "strict" interpleader have no application in the determination of whether interpleader may proceed. See, e.g., Bruce J. Berman & Peter D. Webster, Berman's Florida Civil Procedure § 1.240:4 (West's Fla. Prac. Series 2015 ed.) (explaining the historical development of the requirements for "strict" interpleader); see also Bradley v. Kochenash, 44 F.3d 166, 168 (2d Cir. 1995).

Thus, under the modern rule, the nature or propriety of the stakeholder's possession does not determine whether a plaintiff may bring an action for interpleader. See Joe Hatton, Inc., 247 So. 2d at 782-83 (finding that interpleader was the proper method for the agricultural commissioner to return assessments that had been deemed unconstitutional and to which the state was no longer legally entitled). The purpose of interpleader is to protect a stakeholder, who himself has no interest in the stake, from liability for incorrectly determining which of the multiple claimants is entitled to the stake. See Fla. R. Civ. P. 1.240 author's cmt.-1967. Thus, whether Sarasota Vault has

_____

double vexation." Riverside Bank of Jacksonville v. Fla. Dealers & Growers Bank, 151 So. 2d 834, 836 (Fla. 1st DCA 1963), superseded by rule, Fla. R. Civ. P. 1.240, as stated in Zimmerman, 34 So. 3d at 202.

"naked" or legal authority to deliver the gems to the parties is not relevant to whether it has properly pleaded an action for interpleader and whether the trial court has properly ordered the gems to remain in the vault pending a determination of the parties' interests in them.

We conclude that the trial court's determination that this is a proper case for interpleader is not a departure from the essential requirements of the law. Sarasota Vault does not claim any interest in the gems. But in order for any of the claimants to take possession of the gems, they must obtain physical access to the vault with the permission of Sarasota Vault. Sarasota Vault has properly alleged that, based on what is admittedly a convoluted series of events, it is unclear who properly owns the gems and that it faces liability to multiple parties if it either denies or allows any one of them access to the gems. Red Beryl has made demand that it will sue for conversion if Sarasota Vault fails to turn over the gems; the lenders have in fact filed suit against Sarasota Vault in Utah state court alleging conversion and breach of contract for Sarasota Vault's failure to deliver the gems pursuant to the blocking agreement, and the lenders have filed several counterclaims against Sarasota Vault in this case alleging various causes of action based on Red Beryl's failure to deliver the gems pursuant to the blocking agreement. Putting aside whether Sarasota Vault bears any responsibility or fault for the circumstances leading to the dispute, it can take no course of action or inaction regarding the gems without facing liability to someone. Although this situation is unusual, it is precisely the kind of situation that interpleader was intended to address.

Petition for certiorari denied.

CASANUEVA and KHOUZAM, JJ., Concur.